**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| RICHARD GLAWSON,      ) | |
|                ) | |
|     Plaintiff,     ) | |
|                ) | |
|     v.           ) | No. 18–cv-2673 (KBJ) |
|                ) | |
| EXECUTIVE OFFICE FOR UNITED   ) | |
| STATES ATTORNEYS,     ) | |
|                ) | |
|     Defendant.     ) | |
|                ) | |

## MEMORANDUM OPINION

*Pro se* plaintiff Richard Glawson has filed this lawsuit to obtain certain records from the Executive Office for United States Attorneys ("EOUSA") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Before this Court at present are cross-motions for summary judgment that Glawson and EOUSA have filed. (*See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 13; Defs.' Mot. for Summ. J. & Opp'n to Pl.'s Mot. ("Def.'s Mot."), ECF No. 16.) Because EOUSA has provided evidence of an adequate search that yielded no responsive records, as explained below, Glawson's motion will be **DENIED** and EOUSA's motion will be **GRANTED**. A separate Order consistent with the Memorandum Opinion will follow.

## I.   BACKGROUND

In March of 2008, Glawson was convicted of various drug offenses at the conclusion of a jury trial in the United States District Court for the Middle District of Georgia. (*See* Judgment, *United States v. Glawson*, 5:05-cr-00013 (M.D. Ga.), Ex. D-1

to Compl., ECF No. 1-1 at 30–31.)[1]  In December of 2017—approximately twelve years after the criminal indictment that led to Glawson's conviction—Glawson sent a request to EOUSA seeking three enumerated categories of documents "that relate to 'only' me and [G]rand Jury Indictment 5:05-cr-13 (WDO) filed on 2/17/2005 in the U.S. District Court for the Middle District of Georgia, Macon Division":

> (1) "The Grand Jury Instructions and charges given to Grand Jury";
>
> (2) "All Commencement, Termination, and Extension orders for Grand Jury"; and
>
> (3) "A Certified Copy of the original [G]rand Jury indictment[.]"

(FOIA/Privacy Act Request, Ex. A. to Decl. of John W. Kornmeier ("Kornmeier Decl."), Ex. 1 to Def.'s Mot, ECF No. 16-3, at 4; Sworn Aff. of Pl. Richard Glawson ("Glawson Aff."), Ex. 1 to Pl.'s Mot., ECF No. 13-1, ¶ 4.)[2]

After EOUSA did not timely respond to his request, Glawson filed the instant lawsuit on October 29, 2018.  (*See* Compl., ECF No. 1.)  In his complaint, Lawson alleges that EOUSA violated the FOIA and the Privacy Act by refusing to disclose the requested Grand Jury records, and he requests an order from this Court compelling their production.  (*See id*. at 4, 13.)  EOUSA answered Glawson's complaint on February 19, 2019 (*see* Ans., ECF No. 11), and thereafter undertook a search for responsive records. To this end, EOUSA asked the U.S. Attorney's Office for the Middle District of Georgia to search for the documents that Glawson requested.  (Kornmeier Decl. ¶ 6.)

---

[1]  Page number citations to the documents that the parties have filed refer to the page numbers automatically assigned by the Court's electronic case filing system.

[2]  Glawson's complaint refers to two additional FOIA requests (*see* Compl. ¶¶ 9, 11), but it is undisputed that the sole basis of this lawsuit is the request of December 10, 2017, which sought only these three enumerated categories of records (Def.'s Stmt. of Undisputed Material Facts, ECF No. 16-2, ¶ 2; *see also* Kornmeier Decl.,¶ 5).

Legal Assistant Mary Ann Gallaher in the Criminal Division of the U.S. Attorney's Office for the Middle District of Georgia ("USAO/GAMD") performed the search on May 1, 2019, but did not locate any responsive records.  (*See* Decl. of Mary Ann Gallaher ("Gallaher Decl."), Ex. B to Kornmeier Decl., ECF No. 16-3 at 5–8, ¶¶ 1, 5.)

Gallaher's search began with the "Caseview database" that all U.S. Attorneys' Offices use "to track all [open and closed] civil, criminal, and appellate investigations, cases, and matters" (*id*. ¶ 9); she "utilized the . . . system to locate any records [in the USAO/GAMD files] identifiable by the name Richard Glawson" (*id.*).  As a result of this search, Gallaher found Glawson's criminal case file and another civil case file concerning him.  (*See id*. ¶¶ 10–11.)  Gallaher then "thoroughly searched through" those two files for the specific records Glawson requested.  (*Id*. ¶ 12.)  She also "requested . . . a complete search" of the USAO/GAMD's grand jury records (*id*. ¶ 6), but was informed on May 7, 2019, "that grand jury records dating back ten years were destroyed prior to [the] request" at issue, "in line with [USAO/GAMD's] records management policy" (*id*. ¶¶ 6, 13).  Finally, Gallaher searched the court website of the Middle District of Georgia "to collect any information on grand jury commencements, termination and[/]or extensions," but "found only court information[.]" (*Id.* ¶ 7.)  By letter dated May 29, 2019, EOUSA informed Glawson that it had not located any responsive records.  However, the agency also enclosed a "courtesy copy of the indictment that is not certified."  (Letter from to Kevin Krebs to Richard B. Glawson (May 29, 2019), Ex. C to Kornmeier Decl., ECF No. 16-3, at 9 n.1.)

After initiating the instant lawsuit but before he received this response from EOUSA, Glawson filed a motion for summary judgment.  (*See* Pl.'s Mot.)  In his

motion, Glawson argues that EOUSA has "not satisfied all of [its] obligations with respect to Plaintiff's FOIA/PA request" in that it has "not produced one page of information, [has] not identified one requested record, [and has] not identified or applied any FOIA/PA exemption." (*Id.* at 2.) EOUSA filed a cross-motion seeking summary judgment on June 27, 2019, in the wake of Gallaher's search and its no-response finding. In its filing, EOUSA asserts that the search Gallaher conducted was "adequate and reasonable" and that the agency is not improperly withholding any records because "no records were located." (Defs.' Mot at 2.) In Glawson's response to EOUSA's motion, which was filed on July 29, 2019, Glawson does not directly assail the search that EOUSA conducted; instead, Glawson requests an order from this Court that both directs EOUSA "to search the office of the Clerk for all records related to the grand jury named above" (Pl.'s Resp. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 18, at 4) and also requires EOUSA "to file a *Vaughn* index listing all the documents being withheld" (*id.* at 3).

The parties' cross-motions are ripe (*see* Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), ECF No. 20; Pl.'s Reply in Opp'n to Def.'s Reply, ECF No. 22), and ready for this Court's review.

## II.   LEGAL STANDARDS

### A.   The FOIA And The Privacy Act

Section 552(a)(3)(A) of Title 5 of the United States Code requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5

U.S.C. § 552(a)(3)(A).  The FOIA "was enacted to facilitate public access to Government documents" in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted).  Thus, the Court may enjoin a government agency from improperly withholding records.  *See* 5 U.S.C. § 552(a)(4)(B).  However, if "an agency does not possess or control the records a requester seeks, the agency's non-disclosure does not violate FOIA because it has not 'withheld' anything."  *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

In contrast to the FOIA, "[w]hen passing the Privacy Act, Congress was addressing the need for individuals to have protection for their privacy concerns." *Alexander v. FBI*, 971 F. Supp. 603, 606 (D.D.C. 1997).  The Privacy Act governs the manner and extent to which federal agencies may acquire, maintain, use, and disclose information about an individual.  *See* 5 U.S.C. §§ 552a(b), (e)(1)–(10).  Both the FOIA and the Privacy Act "explicitly state that access to records under each is available without regard to exemptions under the other."  *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (citations omitted).

Because an inadequate search for records can constitute an improper withholding, *see Maydak v. U.S. Dep't. of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003), a requester who is dissatisfied with an agency's 'no-records' response has a cause of action to sue to challenge the adequacy of the agency's search under both the FOIA and the Privacy Act, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

326 (D.C. Cir. 1999) (citing 5 U.S.C. § 552(a)(6)(A)(i) & (a)(6)(C); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 67 (D.C. Cir. 1990)); *Williams v. Fanning*, 63 F. Supp. 3d 88, 93–94 (D.D.C. 2014).

### B.      Summary Judgment In The FOIA And The Privacy Act Context

Disputes arising from an agency's response to a request for records "'typically and appropriately are decided on motions for summary judgment.'" *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Rule 56 of the Federal Rules of Civil Procedure requires that a court grant summary judgment where the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Judicial Watch*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  "[T]he substantive law will identify which facts are material," *Anderson*, 477 U.S. at 248, and only "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,]" *id.*

"'A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal alteration and quotation marks omitted)).  "When, as in this case, both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard[,]"

*Ehrman v. United States*, 429 F. Supp. 2d 61, 67 (D.D.C. 2006) (citations omitted), and

neither party "concede[s] the factual assertions of the opposing motion," *CEI*

*Washington Bureau, Inc. v. Dep't of Justice*, 469 F.3d 126, 129 (D.C. Cir. 2006) (citing

*Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989)).

When "acting on a motion for summary judgment, the court's function is limited

to ascertaining whether any factual issue pertinent to the controversy exists; it does not

extend to resolution of any such issue." *Sherwood*, 871 F.2d at 1147 (internal quotation

marks, citation, and alteration omitted).  In the FOIA/Privacy Act context, a district

court conducts a *de novo* review of the record, and the federal agency bears the burden

of proving that it has complied with its disclosure obligations.  *See In Def. of Animals v.*

*Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008).  Because the court

must analyze all underlying facts and inferences in the light most favorable to the

requester, *see Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), it is

appropriate to enter summary judgment for an agency only if "the agency proves that it

has fully discharged its obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C.

1996).

"An agency seeking summary judgment in a case challenging its response to a

request for records whether that request is made under the Privacy Act or FOIA, must

show that it conducted 'a search reasonably calculated to uncover all relevant

documents, and, if challenged, must demonstrate beyond material doubt that the search

was reasonable.'"  *Williams*, 63 F. Supp. 3d at 93 (quoting *Truitt v. Dep't of State*, 897

F.2d 540, 542 (D.C. Cir. 1990)).  The court may grant summary judgment to the agency

based on information provided in "a reasonably detailed affidavit, setting forth the

search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena*, 180 F.3d at 326 (internal quotation marks, citation, and alteration omitted); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1999) (highlighting the "reasonableness" standard). Agency affidavits submitted in this context "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of . . . documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). And, ultimately, the agency will be entitled to summary judgment unless "'the record leaves substantial doubt as to the sufficiency of the search[.]'" *Campbell*, 164 F.3d at 27 (quoting *Truitt*, 897 F.2d at 542).

### C.     Application Of The Governing Legal Standards To *Pro Se* Parties

Finally, when evaluating each parties' summary judgment motion, this Court must be mindful of the fact that Glawson is proceeding in this matter *pro se*. It is clear beyond cavil that the pleadings of *pro se* parties are to be "liberally construed[,]" and that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). However, it is equally clear that "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

Thus, a *pro se* "complaint must still present a claim on which the Court can grant relief." *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (internal quotation marks and citation omitted).  In addition, when seeking summary judgment or opposing a defendant's motion for summary judgment, a *pro se* plaintiff, just like a represented party, must comply with a court's rules regarding submitting and responding to statements of material fact and identifying record evidence that establishes each element of his claim for relief.  *See, e.g.*, *Grimes v. Dist. of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) ("Because Grimes is the plaintiff and so bears the burden of proof of her claims, it is well established that she cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence.").

## III.   ANALYSIS

As explained above, "the touchstone when evaluating the adequacy of an agency's search for records in response to a FOIA [or Privacy Act] request is reasonableness, and in particular, whether the agency made 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 125 (D.D.C. 2018) (quoting *Oglesby*, 920 F.2d at 68); *see also Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (noting that, "as long as this standard is met, a court need not quibble over every perceived inadequacy in an agency's response, however slight").  Here, EOUSA has provided a declaration that describes first-hand the steps that were taken to locate the records at issue (*see* Gallaher Decl. ¶¶ 9–13), and it is clear from the description provided that the

9

declarant not only "identified and searched all locations [within the relevant database] likely to contain responsive records" but went even further afield, seeking to follow up with the Grand Jury coordinator and search the office's grand jury records generally, in order to the locate the documents Glawson requested (*see id*. ¶ 13 (Gallaher explaining that she was informed that grand jury "records dating back ten years were destroyed in line with [the Office's] records management policy")).  Given this undisputed description of the search that was conducted in response to Glawson's document request, this Court is fully satisfied that the agency's search was reasonably calculated to locate the responsive records for FOIA purposes.

Glawson's response—*i.e.,* that "the record raises serious doubts as to the completeness" of the search (Pl.'s Opp'n at 1)—is unavailing.  It is well established that the *results* of a search for records pursuant to the FOIA or the Privacy Act are not dispositive of the reasonableness of the agency's efforts.  *See, e.g.*, *Hedrick v. FBI*, 216 F. Supp. 3d 84, 94 (D.D.C. 2016).  And the fact that Glawson can conceive of places outside of the agency's purview where the records might be found (*see* Opp'n at 2 (asking the Court to order EOUSA "to conduct a search at the office of the clerk of the [c]ourt where the [requested] grand jury records are in fact located")) is of no moment.  An agency component like EOUSA is responsible for disclosing only those records the agency possesses and controls at the time of a FOIA or Privacy Act request.  It has no obligation to search *beyond* its files, and it is not at all clear that EOUSA is even authorized to seek records from the clerk of court's files, given that federal courts are excluded from the reach of both the FOIA and the Privacy Act.  *See Banks v. Dep't of Justice*, 538 F. Supp. 2d 228, 231 (D.D.C. 2008) ("The term 'agency' as defined for

purposes of FOIA and the Privacy Act expressly excludes the courts of the United

States[.]") (citing 5 U.S.C. §§ 551(1)(B), 552(f)(1)).

    Nor can EOUSA reasonably be expected to produce a Vaughn index for records

that it has not found.  (*See* Pl.'s Opp'n at 3, 4 ("request[ing] a court order directing

[EOUSA] to file a Vaughn index.)  A Vaughn index is a judicially approved tool for an

agency to justify *its withholdings* under the FOIA, and there are no withholdings when

the agency provides a no-records response to a FOIA request.  *See Keys v. U.S. Dep't of

Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987) (discussing *Vaughn v. Rosen*, 484 F.2d 820

(D.C. Cir. 1973)); *see also Willis v. NSA*, No. 17-cv-2038, 2019 WL 1924249, at *9

(D.D.C. Apr. 30, 2019) (explaining that "an obligation to create a Vaughn index only

attaches after an agency searches for documents and withholds documents or portions

thereof based on particular FOIA exemptions" (citation omitted)).

    In short, this Court finds that there is no genuine issue of fact with respect to the

reasonableness of EOUSA's search for records in response to Glawson's document

request, such that EOUSA is entitled to summary judgment.  Moreover, and by contrast,

there is no legal or factual basis for maintaining that Glawson is entitled to summary

judgment instead of EOUSA.[3]

## IV.  CONCLUSION

    For the foregoing reasons, this Court concludes that EOUSA has fully discharged

its obligations under the FOIA and the Privacy Act, and it is entitled to judgment as a

---

[3] To the extent that Glawson's motion takes issue with EOUSA's characterization of certain allegations in the complaint as "legal conclusions" or "legal argument" that required no response by the defendant (Pl.'s Stmt. of Material Facts Genuinely in Dispute, ECF No. 13 at 19–25, ¶¶ 1–3), Glawson is mistaken and EOUSA is correct:  the assertions at issue are not facts, nor do they have any bearing on the central question of whether EOUSA has improperly withheld records by conducting an inadequate search; therefore, no response is needed.

matter of law.  Consequently, as set forth in the accompanying Order, Defendants'
motion for summary judgment is **GRANTED,** and Plaintiff's motion for summary
judgment is **DENIED**.


DATE:  May 26, 2020                     *Ketanji Brown Jackson*
                                        KETANJI BROWN JACKSON
                                        United States District Judge